UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


CALVIN JOHNSON,                    )  3:05CV2550
                                  )
              Petitioner          )  JUDGE  PATRICIA GAUGHAN
                                  )  (Magistrate Judge Kenneth S. McHargh)
       v.                         )
                                  )
KELLEH KONTEH,                    )
              Warden,             )
                                  )
       Respondent                 )  REPORT AND RECOMMENDED
                                  )  <u>DECISION OF MAGISTRATE JUDGE</u>


McHARGH, MAG. J.

The petitioner Calvin Johnson ("Johnson") has filed a petition for a writ of

habeas corpus regarding his 2003 conviction for engaging in a pattern of corrupt

activity in the Wyandot County, Ohio, Court of Common Pleas.  (Doc. 1.)  Johnson

raises five grounds for relief in his petition:

> 1.  Calvin Johnson was deprived of his right to due process of law and
> a unanimous verdict, as guaranteed by the 5th, 6th, and 14th
> Amendments to the United States Constitution, based on the trial
> court's erroneous jury instructions, which failed to ensure a unanimous
> jury verdict on all the elements of the offense charged.
>
> 2.  The State of Ohio failed to present sufficient evidence to prove all
> the elements of the offense charged by proof beyond a reasonable
> doubt. The State presented insufficient evidence of the element of
> "enterprise," separate and distinct from the "pattern of corrupt
> activity," and Mr. Johnson's conviction violates the Due Process
> Clauses of the 5th and 14th Amendments to the United States
> Constitution.
>
> 3.  Trial counsel rendered constitutionally deficient and prejudicial
> performance, based on a failure to properly raise issues at trial and
> properly preserve those issues for review on appeal. Trial counsel's

ineffective assistance contravened the 6th and 14th Amendments to the United States Constitution.

4.  Ohio's corrupt activity statute, [Ohio Rev. Code] R.C. 2923.32, is unconstitutionally vague, in contravention of the 14th Amendment to the United States Constitution.

5.  Mr. Johnson was deprived of his right to the effective assistance of appellate counsel, in contravention of the 6th and 14th Amendments to the United States Constitution, based on appellate counsel's failure to raise a meritorious sentencing issue, under <u>Blakely v. Washington</u>, 542 U.S. 296. 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and <u>United States v. Booker</u>, 542 U.S. ___, 125 S.Ct. 738. 160 L.Ed.2d 621 (2005).  Had appellate counsel raised a 6th Amendment challenge to the trial court's imposition of a non-minimum prison term in this case, Mr. Johnson's sentence would have been reversed, and this case remanded for imposition of a minimum prison term.

(Doc. 1, §§12.A.-12.E.)

The respondent argues that the petition should not be granted because two of

the claims have been procedurally defaulted, and the remainder have no merit.

(Doc. 9.)


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

On July 18, 2001, the Wyandot County Grand Jury indicted Johnson on one count of complicity to possess crack cocaine in violation of R.C. 2925.11(A). On May 15, 2002, Johnson was additionally indicted on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32. The second indictment alleged twenty incidents of corrupt activity, consisting of drug trafficking and possession, and was specifically charged as a felony of the first degree. Subsequently, the indictments were consolidated for trial, and a trial was conducted before a jury in March of 2003.

At trial, the state presented evidence that apartment manager, Chet Rowe, contacted the police when he noticed a steady increase in traffic

coming and going to one of the apartments at the complex. Rowe's call prompted the police to conduct surveillance on the apartment of Deb Thomas. The police also began pulling the trash from the dumpster behind Thomas' apartment, looking for envelopes or other information with her or her children's name, in order to identify the trash as hers. As a result of the trash pull, the police recovered almost 200 sandwich baggies with the corners missing, over 60 sandwich baggie knots, several spent lighters and several pieces of burnt steel wool. All of the items recovered from the trash pull were circumstantial evidence of drug use and sales.

Based upon the contents recovered from the trash pull, the police were able to obtain a search warrant for Thomas' apartment. During the search of Thomas' apartment, the police recovered 50 individually wrapped packages of suspected crack cocaine, nine hundred dollars in cash, a razor blade and plate and a bureau of motor vehicle slip registration for a vehicle belonging to Calvin Johnson.

Matt Congleton, a chemist from the Ohio Attorney General's Office of Criminal Investigation and Identification, testified that the 50 packages obtained from Thomas' office contained crack cocaine. He also testified that 49 of the packages, which were individually wrapped, weighed a total of 8.5 grams. The other individually wrapped bag contained one piece of crack cocaine that weighed 27.4 grams.

The state also presented the testimony of Deb Thomas and Tamara Ellen Morris. Both Thomas and Morris had been separately prosecuted for the possession of crack cocaine. Each plead guilty and promised to testify against Johnson, receiving a two year prison sentence and a 30 day jail sentence, respectively.

Both Thomas and Morris testified that they knew Johnson as "Marcus," that Johnson had sold crack cocaine out of their apartments and that Johnson had supplied them with crack cocaine to sell out of their apartments. Specifically, Thomas stated that she had been romantically involved with Johnson from September through December of 2001 and that Johnson made trips from Toledo and would stay with her two to four days at a time. Each time Johnson would come from Toledo he would bring with him approximately half an ounce to an ounce of crack cocaine. Thomas also testified that Johnson taught her how to "cut" the crack cocaine into smaller pieces and how to package it for sale. Morris testified that Johnson sold crack cocaine out of she and her husband's home from June to September of 2000. Morris stated that both she and her husband were addicted to crack cocaine and that Johnson would supply them crack cocaine for the use

of their home. She also stated that Johnson traveled from Toledo and would stay approximately two to three days at a time.

Finally, the state presented the testimony of William Latham, Wyandot County Prosecuting Attorney's Office investigator, who spoke with Johnson after his arrest. According to Latham, Johnson stated that he was in Upper Sandusky only to party and never supplied Morris or Thomas with crack cocaine.

Upon the state resting its case, Johnson himself took the stand. He denied being known as "Marcus," but stated that he did have a son with that name.  He also denied supplying Morris and Thomas with crack cocaine for use or sale, as well as denied selling crack cocaine out of their homes. Johnson did admit to knowing Morris, her husband and Thomas, but stated that he only partied with them.

Following the three day trial, the jury acquitted Johnson of the complicity charge, but found him guilty of the corrupt activity charge. The jury went on to make a specific finding, as to the corrupt activity charge, that the amount of drugs involved were not equal to or greater than five grams. Subsequently, based on the specific findings made by the jury as to weight, Johnson was sentenced on the corrupt activity charge as a second degree felony.

(Doc. 9, RX 20, at 2-6; State v. Johnson, No. 16-03-09, 2004 WL 603622, at *1-*2

(Ohio Ct. App. March 29, 2004).)

Johnson, through his appellate counsel, raised eight assignments of error on

his direct appeal:

1.  The trial court erred in instructing the jury that it could find the defendant guilty of [Ohio Rev. Code] O.R.C. § 2923.32 on alternative theories of guilt, in violation of appellant's rights under the Ohio R. Crim. P. 31(a); U.S. Const. Amends. VI and XIV; and Art. I § 10 of the Ohio Constitution; Schad v. Arizona, 501 U.S. 624 (1991); Richardson v. United States, 526 U.S. 813 (1999).

2.  The trial court erred in sentencing appellant for a second degree corrupt activity offense because only the jury has the power to convict on a lesser degreed offense. Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Gaudin, 515 U.S. 560 (1995); U.S. Const. Amend. V, VI, XIV; O.R.C. § 2945.74.

3.  The evidence is insufficient to support a conviction under O.R.C. § 2923.32 because the state failed to prove an enterprise separate and distinct from the pattern of corrupt activity.  U.S. Const. Amend. V, VI, VIII, IX, XIV, O.R.C. § 2923.32.

4.  The trial court erred in sentencing appellant to a five year license suspension because appellant was not convicted of a drug offense. O.R.C. § 2925.03.

5.  The trial court erred in assessing court costs and court appointed counsel fees against an indigent defendant.  O.R.C. §§ 2949.14, 2949.15, 2949.092, 2941.51(d).

6.  Trial counsel rendered ineffective assistance in failing to preserve issues for appeal.  U.S. Const. Amend. VI, XIV.

7.  The evidence is insufficient to support a conviction of corrupt activity because the evidence is insufficient to support a finding that appellant either trafficked in drugs or possessed drugs.  R.C. 2923.32; 2925.03; 2923.31; In re Winship, 397 U.S. 358, 364 (1970).

8.  O.R.C. § 2923.32 is unconstitutional because it is vague and unspecific both on its face and as applied to appellant.  U.S. Const. Amend. VIII, XIV; O.R.C. § 2923.32.

(Doc. 9, RX 17.)

On March 29, 2004, the Ohio Court of Appeals reversed in part, and affirmed in part his conviction.  (Doc. 9, RX 20, at 27; Johnson, 2004 WL 603622, at *12.) The appellate court found that the trial court had erred in suspending Johnson's driver's license, and had erred in assessing court-appointed attorney's fees, but otherwise affirmed the conviction.  (RX 20, at 23-24, 26; Johnson, 2004 WL 603622, at *10.)

Johnson filed an appeal with the Ohio Supreme Court on April 27, 2004. (Doc. 9, RX 21-22.)  He raised the following seven propositions of law:

1.  When a trial court instructs the jury that it can find the defendant guilty of O.R.C. § 2923.32 on alternative theories of guilt, a defendant's rights under Ohio R. Crim. P. 31(a); U.S. Const. Amends. VI and XIV; and Art. I § 10 of the Ohio Constitution are violated; Schad v. Arizona, 501 U.S. 624 (1991); Richardson v. United States, 526 U.S. 813 (1999).

2.  A trial court may not enter a verdict on a lesser degreed offense because only the jury has the power to convict on a lesser degreed offense. Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Gaudin, 515 U.S. 560 (1995); U.S. Const. Amend. V, VI, XIV; O.R.C. § 2945.74.

3.  The evidence is insufficient to support a conviction under O.R.C. § 2923.32 when the state fails to prove an enterprise separate and distinct from the pattern of corrupt activity. U.S. Const. Amend. V, VI, VIII, IX, XIV, O.R.C. § 2923.32.

4.  The trial court erred in assessing court costs against an indigent defendant. O.R.C. §§ 2949.14, 2949.15, 2949.092, 2941.51(d).

5.  Trial counsel rendered ineffective assistance in failing to preserve issues for appeal. U.S. Const. Amend. VI, XIV.

6.  The evidence is insufficient to support a conviction of corrupt activity when the evidence is insufficient to support a finding that appellant either trafficked in drugs or possessed drugs. O.R.C. § 2923.32; 2925.03; 2923.31; In re Winship, 397 U.S. 358, 364 (1970).

7.  O.R.C. § 2923.32 is unconstitutional because it is vague and unspecific both on its face and as applied to appellant. U.S. Const. Amend. VIII, XIV; O.R.C. § 2923.32.

(Doc. 9, RX 22.)

On August 5, 2004, the Ohio Supreme Court accepted jurisdiction over the appeal only as to Proposition No. 4, and held the case for disposition pending a decision in a related case. (Doc. 9, RX 24.) Subsequently, the decision below was affirmed on March 16, 2005, on the basis of State v. White, 103 Ohio St.3d 580, 817

N.E.2d 393 (2004) (syllabus), which held that a trial court may assess court costs against an indigent defendant convicted of a felony.

On Jan. 26, 2005, Johnson moved, under Ohio App.R. 26(B), to re-open his original appeal on the grounds that appellate counsel was ineffective.  (Doc. 9, RX 26.)  Johnson argued that his counsel failed to present the following assignment of error, which would have changed the outcome of his appeal:

> The trial court erred when it imposed a term of imprisonment that exceeded the minimum term of imprisonment, based on facts that were neither found by a jury nor admitted by Mr. Johnson, in contravention of Mr. Johnson's Sixth Amendment right to trial by jury.  Blakely v. Washington (2004), 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403, 2004 WL 1402697.

(RX 26, at 4.)  Johnson argued that "good cause" for his failure to file his Rule 26(B) application in a timely manner was also the ineffective assistance of his appellate counsel.  Id. at 2.

The court of appeals denied his delayed application for reopening on March 25, 2005, finding that Johnson had failed to show good cause for its untimeliness. The court noted that "previous counsel and current counsel work for the same [public defenders] office" and that "[c]urrent counsel's misunderstandings regarding the issues and her workload are not good cause for the extended delay."  (Doc. 9, RX 28, at 1.)  The court also found that there was no showing of ineffectiveness by appellate counsel.  Id. at 1-2.

Johnson appealed this denial to the Ohio Supreme Court on May 4, 2005, raising the following propositions of law:

> 1.  Consistent with the Sixth Amendment to the United States Constitution, a trial court may not impose a term of incarceration

which exceeds the statutory minimum term of imprisonment upon an offender who has never before served a prison term, unless the statutory criteria specified in R.C. 2929.12(B) are proven beyond a reasonable doubt.  Blakely v. Washington (2004), 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403, 2004 WL 1402697; United States v. Booker (2005), 542 U.S. ___, 125 S.Ct. 738, ___ L.Ed.2d ___, 2005 WL 50108.

2.  Appointed appellate counsel's failure to raise a meritorious sentencing issue constitutes ineffective assistance of counsel.  Sixth and Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution.

(Doc. 9, RX 30.)

The Ohio Supreme Court dismissed Johnson's appeal as not involving any

substantial constitutional question, on July 13, 2005.  (Doc. 9, RX 32.)


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.


## III.  PROCEDURAL DEFAULT

The respondent contends that the first and fifth claims of the petition have been procedurally defaulted.  (Doc. 9, at 13, 19.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief. Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000). Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750); Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004).

The court considers four factors to determine whether a claim has been procedurally defaulted: (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether

the state procedural forfeiture is an adequate and independent state ground on
which the state can rely to foreclose review of the federal claim; and, (4) the
petitioner must demonstrate that there was cause for him not to follow the
procedural rule, and that he was actually prejudiced by the alleged constitutional
error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.
1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

### A.  Erroneous Jury Instructions

The first ground of the petition is that:

> Calvin Johnson was deprived of his right to due process of law and a
> unanimous verdict, as guaranteed by the 5th, 6th, and 14th
> Amendments to the United States Constitution, based on the trial
> court's erroneous jury instructions, which failed to ensure a unanimous
> jury verdict on all the elements of the offense charged.

(Doc. 1, at § 12.A.)  The facts supporting this ground are stated as follows:

> The State of Ohio indicted Calvin Johnson on one count of engaging in
> a pattern of corrupt activity, which alleged twenty different incidents
> of corrupt activity, including allegations of both trafficking in crack
> cocaine and possessing crack cocaine.  The trial court instructed the
> jury on alternative theories of guilt, when the court instructed the jury
> that Mr. Johnson could be convicted of the offense if the jury found
> that Mr. Johnson "engaged in certain instances of corrupt activity
> constituting Trafficking in Cocaine and/or possession of Crack
> Cocaine."  (Tr. pp. 596-597.)  The jury acquitted Mr. Johnson of a
> separate charge of complicity and made a specific finding that none of
> the incidents of corrupt activity involved an amount of crack cocaine
> that was equal to or greater than five grams.  The trial court's
> erroneous jury instructions on the elements of the predicate acts failed
> to ensure that the jury unanimously agreed on all of the elements of
> the offense charged.

Id.  The respondent argues that Johnson has procedurally defaulted this ground
through his failure to make a proper contemporaneous objection to the jury
instructions at trial.  (Doc. 9, at 13-19; see also doc. 1, § 12.C. (alleging ineffective

assistance based on failure to object to jury instructions); doc. 9, RX 17, at 5 (appellant concedes he did not object). )

The state court of appeals found that "any error in the instruction has been waived in the absence of plain error."  (RX 20, at 14 n.1; <u>Johnson</u>, 2004 WL 603622, at *6 n.1.)  The court noted that, under state law:

> Errors alleged in jury instructions for which there are no objections are waived in the absence of plain error.  An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise.

(RX 20, at 14-15; <u>Johnson</u>, 2004 WL 603622, at *6 (citations omitted).)  The court reviewed the entire charge to the jury for error, and concluded that "the jury was given the proper instruction for engaging in a pattern of corrupt activity," thus, there was an absence of plain error to overcome the waiver.  (RX 20, at 15, 19; <u>Johnson</u>, 2004 WL 603622, at *6, *8.)

Johnson contends that "the state appellate court did not actually enforce the procedural bar, but in fact reviewed the merits of this claim for relief."  (Doc. 15, at 9.)  However, the state court reviewed the jury instructions only for purposes of plain error review, which does not constitute a waiver of the procedural default rules.  <u>See</u> <u>Seymour v. Walker</u>, 224 F.3d 542, 557 (6th Cir. 2000), <u>cert. denied</u>, 532 U.S. 989 (2001) (contemporaneous objection rule).  <u>Accord</u>, <u>Keith v. Mitchell</u>, 455 F.3d 662, 673-674 (6th Cir. 2006), <u>cert. denied</u>, ___ S.Ct. ___, 2007 WL 186260 (Mar. 26, 2007).

Ohio's contemporaneous objection rule is an adequate and independent state ground on which the state can rely to foreclose habeas review.  <u>Gulertekin v.</u>

Tinnelman-Cooper, 340 F.3d 415, 424 (6th Cir. 2003); Loza v. Mitchell, No. C-1-98-287, 2002 WL 1580520, at *28-*30 (S.D. Ohio June 11, 2002) (citing Scott v. Mitchell, 209 F.3d 854, 867-871 (6th Cir.), cert. denied, 531 U.S. 1021 (2000)).  See generally Wainwright, 433 U.S. at 86-88 (contemporaneous objection rule adequate and independent state ground).  Thus, the first three Maupin factors are satisfied.

Johnson argues that ineffective assistance of counsel, namely the failure to properly object to the jury instructions, is cause to excuse the procedural default. (Doc. 15, at 9-10.)  As to the issue of cause, "[a] claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004) (citing Edwards v. Carpenter, 529 U.S. 446, 452 (2000)).

On direct appeal, Johnson asserted that his trial counsel was ineffective for failing to preserve errors for appeal, specifically including the failure to "object to jury instructions that permitted the jury to convict on a less than unanimous verdict on all of the essential elements of the offense."  (Doc. 9, RX 17, at 14-15.) However, "[a]ttorney error does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient."  Deitz, 391 F.3d at 809 (citing Strickland v. Washington, 466 U.S. 668 (1984)).  Under Strickland, there must be a showing of both "that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant."  Id. (citing Strickland, 466 U.S. at  688, 694).

The state court of appeals found that Johnson failed to show any prejudice from the alleged errors, in light of the court's ruling on the jury instructions. (Doc.

9, RX 20, at 26-27; <u>Johnson</u>, 2004 WL 603622, at *12; <u>see also</u> RX 20, at 14-15;

<u>Johnson</u>, 2004 WL 603622, at *6.)  Thus, because Johnson's trial counsel was not

constitutionally deficient, counsel's performance does not serve as cause to excuse

the procedural default.

The first ground of the petition is barred as procedurally defaulted.

## B.  Ineffective Assistance of Appellate Counsel

The fifth ground of the petition is that:

> Mr. Johnson was deprived of his right to the effective assistance of
> appellate counsel, in contravention of the 6th and 14th Amendments to
> the United States Constitution, based on appellate counsel's failure to
> raise a meritorious sentencing issue, under <u>Blakely v. Washington</u>, 542
> U.S. 296. 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and <u>United States v.</u>
> <u>Booker</u>, 542 U.S. ___, 125 S.Ct. 738. 160 L.Ed.2d 621 (2005).  Had
> appellate counsel raised a 6th Amendment challenge to the trial
> court's imposition of a non-minimum prison term in this case, Mr.
> Johnson's sentence would have been reversed, and this case remanded
> for imposition of a minimum prison term.

(Doc. 1, at § 12.E.)  The facts supporting this ground are stated as follows:

> Calvin Johnson had never before served a prison term, but was
> sentenced to serve a non-minimum prison term of five years in prison
> for his conviction of a second-degree felony.  Before imposing that
> prison term, the trial court was required to make certain statutory
> findings, to support its sentence.  Under <u>Blakely</u> and <u>Booker</u>, those
> findings must be found by the jury, or admitted by the defendant. That
> did not occur in this case.  Accordingly, the trial court's imposition of a
> non-minimum prison term on Mr. Johnson, a person who had never
> before been to prison, contravened Mr. Johnson's 6th Amendment right
> to trial by jury.  Appellate counsel's failure to raise this important
> constitutional issue, challenging the trial court's imposition of sentence
> constituted ineffective assistance of counsel on appeal.

<u>Id.</u>  The respondent argues that Johnson has procedurally defaulted this ground

because he failed to file his Rule 26(B) motion in a timely manner.  (Doc. 9, at 19-

20.)

Johnson moved to re-open his appeal, under Ohio App. Rule 26(B), on the grounds that his appellate counsel was ineffective, but the appellate court ruled that his application was untimely filed, and denied his application on that basis, finding that he had failed to show good cause for the untimely filing.  (Doc. 9, RX 28.)

Claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals.  <u>Monzo v. Edwards</u>, 281 F.3d 568, 577 (6th Cir. 2002) (citing <u>State v. Murnahan</u>, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).  Such a motion must be filed in the court of appeals within 90 days of the appellate judgment.  <u>State v. Lamar</u>, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (per curiam), <u>cert. denied</u>, 543 U.S. 1168 (2005); <u>State v. Reddick</u>, 72 Ohio St. 3d 88, 90, 647 N.E.2d 784, 786 (1995) (per curiam). The appellate judgment was entered March 29, 2004, thus Johnson's application should have been filed by June 28, 2004.  It was not filed until Jan. 26, 2005.  (Doc. 9, RX 26.)

Rule 26(B)'s 90-day filing period is a state procedural rule applicable to Johnson's claim, and the state court found that Johnson failed to comply with the timely-filing provision.  The state court  enforced the procedural sanction by denying his application for reopening.  The Sixth Circuit has found that the "good cause" requirement in Rule 26(B) is an adequate state procedural ground.  <u>Monzo</u>, 281 F.3d at 578; <u>Smith v. Ohio Dept. of Rehab. and Corr.</u>, 331 F.Supp.2d 605, 621-622 (N.D. Ohio 2004), <u>aff'd</u>, 463 F.3d 426 (6th Cir. 2006).  <u>See generally Edwards</u>,

529 U.S. at 453 (ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted).

Thus, Johnson must demonstrate there was cause for him not to follow the procedural rule.  To establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with the state's procedural rule.  Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004) (per curiam), cert. denied, 543 U.S. 989 (2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In Bonilla, a pro se petitioner failed to establish cause for his procedural default despite the sudden departure of his attorney, ignorance of the legal and procedural requirements, and limited access to the prison's law library.  Id.

In support of cause, Johnson had argued:

Mr. Johnson was represented by the same attorney he now claims was ineffective throughout the ninety-day period for filing a timely application for reopening.  Indeed, previous appellate counsel represented Mr. Johnson until October 2004, when undersigned counsel was assigned to Mr. Johnson's case . . . Former appellate counsel was ethically precluded from raising her own ineffectiveness. In addition, for approximately two months, from October 2004 until mid-December 2004, undersigned counsel had a misunderstanding regarding the issue raised in this application, which was ultimately clarified.  From mid-December 2004, to the present, undersigned counsel's workload and other responsibilities prevented her from filing this application.

(Doc. 9, RX 26, at 2, internal citations omitted.)

The state court found his reasons inadequate to excuse the untimely filing: "Previous counsel and current counsel work for the same office [Ohio public defenders].  Current counsel's misunderstandings regarding the issues and her workload are not good cause for the extended delay."  (Doc. 9, RX 28, at 1.)

Moreover, the court noted that there was "absolutely no showing there is a genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal." Id.

The state court's reference to "current counsel," and "the extended delay," suggests that the court was influenced by the fact that, even once Johnson's second appellate counsel took up the issue in October 2004, the application was apparently still not filed within ninety days of that event. Johnson raises no new arguments on the issue of cause. (Doc. 15, at 27-28.)

Further, because an application to reopen under Rule 26(B) is a collateral post-conviction procedure, and not part of the direct appeal, there is no federal constitutional right to effective assistance of counsel in that proceeding. Lopez v. Wilson, 426 F.3d 399 (6th Cir. Oct. 7, 2005) (en banc), cert. denied, 126 S.Ct. 1880 (2006).

Because Johnson has not shown cause, it is unnecessary to consider the issue of prejudice. Murray, 477 U.S. at 494; Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).

The fifth claim has been procedurally defaulted.


## IV.  SUFFICIENCY OF THE EVIDENCE

The second ground of the petition is that:

The State of Ohio failed to present sufficient evidence to prove all the
elements of the offense charged by proof beyond a reasonable doubt.
The State presented insufficient evidence of the element of
"enterprise," separate and distinct from the "pattern of corrupt
activity," and Mr. Johnson's conviction violates the Due Process

Clauses of the 5th and 14th Amendments to the United States
Constitution.

(Doc. 1, at § 12.B.)  The supporting facts are stated as:

> The prosecution failed to present sufficient evidence of an enterprise,
> separate and distinct from a pattern of corrupt activity, as there was
> no evidence of an ongoing organization, with associates who were
> functioning as a continuing unit, separate and distinct from the
> pattern of corrupt activity.  Viewing the evidence in the light most
> favorable to the State, the prosecution proved only drug trafficking and
> drug possession.  The State offered no evidence of a coordinated means
> by which drugs were brought to Upper Sandusky, Ohio, nor any
> purported associates of Mr. Johnson who were engaged with him in a
> concerted effort to bring drugs to Upper Sandusky, Ohio.  The State
> proved only that Mr. Johnson sold drugs at two different locations in
> Upper Sandusky, Ohio, and thus showed only drug trafficking and
> drug possession.  Without sufficient evidence of the element of
> "enterprise," Mr. Johnson's conviction cannot stand.

Id.  On direct appeal, Johnson made essentially the same argument.  (Doc. 9, RX 17,

at 8-11.)

The appellate court rejected his argument.  The court began by setting forth

the standard of review, and outlining the elements of the offense:

> An appellate court's function when reviewing the sufficiency of the
> evidence is to determine whether, after viewing the evidence in a light
> most favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime proven beyond a reasonable
> doubt.  State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492,
> paragraph two of the syllabus, superseded by state constitutional
> amendment on other grounds in State v. Smith (l997), 80 Ohio St.3d
> 89, 684 N.E.2d 668.

> Johnson was found guilty of violating R.C. 2923.32(A)(1), which states:
> (A)(1) No person employed by, or associated with, any
> enterprise shall conduct or participate in, directly or
> indirectly, the affairs of the enterprise through a pattern
> of corrupt activity * * *.

R.C. 2923.31(C) defines "enterprise" to include:

> \* \* \* any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises.

And, finally, R.C. 2923.31(E) states:

> 'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

> The predicate incidents Johnson was alleged to have engaged in included trafficking in and possession of crack cocaine as defined by R.C. 2923.03 and 2925.11, respectively. R.C. 2925.03 defines trafficking as:
>
> (A) No person shall knowingly do any of the following:
> (1) Sell or offer to sell a controlled substance;
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

> Possession of crack cocaine was defined as "knowingly obtained, possessed or used crack cocaine in an amount equal to or exceeding one gram." R.C. 2925.11(A) and (C)(4)(a).

(Doc. 9, RX 20, at 7-9; <u>Johnson</u>, 2004 WL 603622, at \*3-\*4.)

The state court did not explicitly rely on federal case law, but based its ruling on Ohio law. However, the court relied on <u>State v. Jenks</u>, 61 Ohio St.3d 259, 260, 574 N.E.2d 492, 494 (1991) (syllabus, ¶ 2), which followed the sufficiency of evidence standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). (Doc. 9, RX 20, at 7-8; <u>Johnson</u>, 2004 WL 603622, at \*3.) Thus, the issue is whether the state court decision was an "unreasonable application" of clearly established federal law;

in other words, whether the state court identified the correct governing legal principle from  Supreme Court decisions, but unreasonably applied that principle to the facts of Johnson's case.  <u>Williams</u>, 529 U.S. at 410-12.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson</u>, 443 U.S. at 319; <u>Bagby v. Sowders</u>, 894 F.2d 792, 794 (6th Cir.) (en banc), <u>cert. denied</u>, 496 U.S. 929 (1990).  As quoted above, this was the standard applied by the state appellate court.  (Doc. 9, RX 20, at 7-8; <u>Johnson</u>, 2004 WL 603622, at *3.)  Thus, the state court identified the correct governing legal principle from <u>Jackson v. Virginia</u>.

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  <u>Sanford v. Yukins</u>, 288 F.3d 855, 860 (6th Cir.), <u>cert. denied</u>, 537 U.S. 980 (2002) (quoting <u>Jackson</u>, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to determine the elements of the crime.  <u>Cameron v. Birkett</u>, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999), <u>cert. denied</u>, 528 U.S. 1170 (2000)).  The state court of appeals set forth the relevant elements of the offense, as quoted above.

The court next discussed the evidence supporting the conviction:

At trial, there was evidence presented that the investigation began when apartment manager, Chet Rowe, contacted the police about a steady increase in traffic coming and going to one of the apartments in his complex. Rowe also gave the police the license plate number of a car with Lucas County license plates that had been frequently at the

complex for several days at a time. Pursuant to that call, the police began surveillance on Deb Thomas' apartment, including conducting trash pulls that produced evidence of drug use and trafficking. Additionally, the police also observed the car with the Lucas County license plate number that Rowe provided. When the plate number was traced, the police discovered Johnson was the registered owner of that vehicle.

Subsequently, a search warrant was obtained and over thirty-five grams of crack cocaine was recovered from the search of Thomas' apartment. Additionally, the Johnson's BMV vehicle registration was found at Thomas' apartment during the search.

Morris and Thomas both testified that Johnson supplied each with crack cocaine for the use of their apartments. As stated above, both testified that they knew Johnson as "Marcus," that Johnson had sold crack cocaine out of their apartments and that Johnson had supplied them with crack cocaine to sell out of their apartments. Specifically, Thomas stated that she had been romantically involved with Johnson from September through December of 2001 and that Johnson made trips from Toledo and would stay with her two to four days at a time. Each time Johnson would come from Toledo he would bring with him approximately half an ounce to an ounce of crack cocaine. Thomas also testified that Johnson taught her how to "cut" the crack cocaine into smaller pieces and package it for sale. Morris testified that Johnson sold crack cocaine out of she and her husband's home from June to September of 2000. Morris stated that both she and her husband were addicted to crack cocaine and that Johnson would supply them crack cocaine for the use of their home. She also stated that Johnson traveled from Toledo and would stay approximately two to three days at a time.

* * * * *

Based on the above testimony of Morris and Thomas, it is clear the evidence is sufficient to find Johnson either trafficked in or possessed crack cocaine.  * * * * Moreover, both Morris and Thomas corroborated one another's stories. Furthermore, the state's additional evidence further supported a finding that Johnson either trafficked in or possessed crack cocaine. Finally, Johnson's own testimony was sufficient to support a finding of possession of crack cocaine. Accordingly, upon reviewing the evidence in the light most favorable to the state, we find that a rational trier of fact could have found all of the essential elements for either trafficking in or possession of crack cocaine.

Additionally, upon reviewing the evidence presented in a light most favorable to the state, we find that a rational trier of fact could have also found an enterprise distinct and separate from the pattern of corrupt activity. As this Court noted in State v. Sifred, 151 Ohio App.3d 103, 2002-Ohio-6801 at ¶ 43,

> [f]ederal and state courts have generally defined the concept of being 'associated with' an enterprise within the overall context of the statute, often concluding that a defendant has 'associated with' an enterprise when he or she 'participate[d]' in, directly or indirectly, the affairs of the enterprise. In Schlosser, the Ohio Supreme Court described the level of association necessary to support an R.C. 2923.32(A)(1) conviction in a broad sense, indicating that the state 'had to prove that each defendant was *voluntarily connected* to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it.' Again, 'the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise. * * * Direct evidence of agreement is unnecessary: 'proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence, ordinarily the acts and conduct of the alleged conspirators themselves.' Additionally, once the conspiracy had been established, the government need show only 'slight evidence' that a particular person was a member of the conspiracy. Of course, a 'party to the conspiracy need not know the identity, or even the number, of his confederates." (citations omitted.)

Based on the evidence presented at trial, there is sufficient evidence to find that Johnson was engaged in an enterprise involving the transportation and trafficking of drugs from Toledo to Wyandot County. Unlike State v. Agner (1999), 135 Ohio App.3d 286, 290-291, 733 N.E.2d 676, where there was only evidence of a single defendant selling drugs with no further evidence of the defendant being a member of any larger organization, Morris and Thomas' testimony provide evidence of Johnson being the supplier of an enterprise to bring drugs from Toledo to Wyandot County. The testimony of Agent Gyrko further shows the profitability in such an enterprise. Accordingly, reviewing the evidence presented in a light most favorable to the State, we find that a rational trier of fact could have found all of

the essential elements to conclude Johnson was employed by or
associated with an enterprise.

(Doc. 9, RX 20, at 9-13; <u>Johnson</u>, 2004 WL 603622, at *4-*7.)

Johnson protests that "the State failed to establish the existence of an
'enterprise,' separate and distinct from a 'pattern of corrupt activity.'" (Doc. 15, at
15.)  He contends that "there was no evidence that Mr. Johnson was involved in a
coordinated effort with others to bring drugs to Wyandot County." <u>Id.</u> at 16.
Johnson claims that "there actually existed no independent, ongoing entity." <u>Id.</u>

The court looks to state law on the elements of the crime.  <u>Cameron</u>, 348
F.Supp.2d at 838-839.  In <u>State v. Burkitt</u>, the court pointed out that "a collection of
[isolated] drug sales alone will not make a 'pattern' under the corrupt activity
statute." <u>State v. Burkitt</u>, 89 Ohio App.3d 214, 221, 624 N.E.2d 210, 215 (Ohio Ct.
App. 1993).  The statute requires that these activities must be "related to the affairs
of the same enterprise." <u>Id.</u>

"The enterprise is an entity, for present purposes a group of persons
associated together for a common purpose of engaging in a course of conduct." <u>State
v. Wilson</u>, 113 Ohio App.3d 737, 742, 682 N.E.2d 5, 8 (Ohio Ct. App. 1996).  The
existence of an "enterprise" is "proved by evidence of an ongoing organization,
formal or informal, and by evidence that the various associates function as a
continuing unit." <u>Id.</u>

In <u>State v. Humphrey</u>, for example, the state's evidence demonstrated the
existence of an "enterprise" by showing that "a group of persons . . . associated
together for the common purpose of engaging in a course of criminal conduct by

distributing cocaine." <u>State v. Humphrey</u>, No. 2002-CA-30, 2003 WL 21487780, at *6 (Ohio Ct. App. June 27, 2003).  Further, it was "an ongoing organization or entity whose members functioned as a continuing unit."  <u>Id.</u>

Here, regarding the element of the existence of an "enterprise," the state court of appeals found that "a rational trier of fact could have also found an enterprise distinct and separate from the pattern of corrupt activity."  (Doc. 9, RX 20, at 12; <u>Johnson</u>, 2004 WL 603622, at *5.)  Testimony at trial showed that Johnson travelled from Toledo (multiple times) to bring drugs into Wyandot, where their street value was roughly double.  (RX 20, at 11; <u>Johnson</u>, 2004 WL 603622, at *5.)  Johnson used the apartments of Morris and Thomas to sell drugs, supplied them with drugs to sell, and compensated them with drugs for the use of their apartments for this purpose.  (RX 20, at 4-5, 10-11; <u>Johnson</u>, 2004 WL 603622, at *2, *4.)  In addition, Thomas testified that Johnson taught her how to package crack cocaine for sale.  (RX 20, at 4; <u>Johnson</u>, 2004 WL 603622, at *2, *4.)

To grant habeas relief, the federal court does not determine whether the state decision is erroneous or incorrect.  Rather, the court must determine whether the state court decision is an objectively unreasonable application of federal law. <u>Williams</u>, 529 U.S. at 410-12; <u>Lorraine</u>, 291 F.3d at 422.  Here, the court does not find that the state court decision was an "unreasonable application" of <u>Jackson v. Virginia</u>, to the facts of Johnson's case.

The petition should be denied as to the second ground.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The third ground of the petition is that:

> Trial counsel rendered constitutionally deficient and prejudicial performance, based on a failure to properly raise issues at trial and properly preserve those issues for review on appeal. Trial counsel's ineffective assistance contravened the 6th and 14th Amendments to the United States Constitution.

(Doc. 1, at § 12.C.)  The supporting facts are stated as:

> Trial counsel rendered deficient and prejudicial performance when he failed to specifically object to the trial court's erroneous jury instructions on the elements of the offense, see Ground One, supra, and when he failed to specifically argue that the State of Ohio failed to prove the element of "enterprise," separate and distinct from the "pattern of corrupt activity," when making a motion for judgment of acquittal.  See Ground Two, supra.

Id.  On direct appeal, Johnson made essentially the same arguments.  (Doc. 9, RX

17, at 14-15.)

The appellate court rejected his arguments:

> An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different.  Id. at para. three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  State v. Bradley (1989), 42 Ohio St.3d 136, 142.

> In light of our disposition of the preceding assignments of error, we cannot find that there is a reasonable probability that the claimed deficiencies would have changed the result of the trial.

(Doc. 9, RX 20, at 26-27; Johnson, 2004 WL 603622, at *12.)

Again, the state court did not explicitly rely on federal case law, but based its ruling on Ohio law.  However, under Ohio law, the standard for evaluating an ineffective assistance of counsel claim "is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674."  State v. Bradley, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, 379 (1989), cert. denied, 497 U.S. 1011 (1990).  Thus, the issue is whether the state court decision was an "unreasonable application" of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from  Supreme Court decisions, but unreasonably applied that principle to the facts of Johnson's case.  Williams, 529 U.S. at 410-12.

In Strickland, the Supreme Court formulated a two-part test for examining an ineffective assistance of counsel claim.  Strickland, 466 U.S. at 691.

First, the petitioner must show that:

" . . . counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

Miller v. Webb, 385 F.3d 666, 672 (6th Cir. 2004) (quoting Strickland, 466 U.S. at 689).  In order to avoid second-guessing counsel's decisions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Frazier v. Huffman, 343 F.3d 780, 794 (6th Cir. 2003), cert. denied, 541

U.S. 1095 (2004) (quoting <u>Strickland</u>, 466 U.S. at 689, internal quotation marks omitted); <u>Washington v. Hofbauer</u>, 228 F.3d 689, 702 (6th Cir. 2000).

In addition, any deficient performance alone is not sufficient to grant relief on a claim for ineffective assistance of counsel.  <u>Strickland</u>'s second prong requires that counsel's deficiency must have actually caused prejudice to the petitioner.  <u>Joshua v. Dewitt</u>, 341 F.3d 430, 437 (6th Cir. 2003).  The second requirement is that the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Frazier</u>, 343 F.3d at 794 (quoting <u>Strickland</u>, 466 U.S. at 694); <u>Washington</u>, 228 F.3d at 702.

In the habeas context, this court considers petitioner's claim "within the more limited assessment of whether the state court's application of <u>Strickland</u> to the facts of this case was objectively unreasonable." <u>Washington</u>, 228 F.3d at 702.  The court will examine the state court rulings under these standards.

The state court correctly outlined the <u>Strickland</u> factors.  (Doc. 9, RX 20, at 26-27; <u>Johnson</u>, 2004 WL 603622, at *12.)  The court ruled that, in light of their previous disposition of the relevant issues, "we cannot find that there is a reasonable probability that the claimed deficiencies would have changed the result of the trial."  (RX 20, at 26-27; <u>Johnson</u>, 2004 WL 603622, at *12.)  As discussed earlier, the appellate court reviewed the charge to the jury, and concluded that "the jury was given the proper instruction for engaging in a pattern of corrupt activity." (RX 20, at 15, 19; <u>Johnson</u>, 2004 WL 603622, at *6, *8.)  Thus, a failure to object to

these instructions would not be prejudicial. Similarly, the state court of appeals found that the evidence supported a conviction on the "enterprise" element. (RX 20, at 12-13; <u>Johnson</u>, 2004 WL 603622, at *5-*6.) Thus, a failure to move for acquittal on that basis would not be prejudicial.

The court does not find that the state court decision was an "unreasonable application" of <u>Strickland v. Washington</u> to the facts of Johnson's case. The petition should be denied as to the third ground.

## VI. STATUTE UNCONSTITUTIONALLY VAGUE?

The fourth ground of the petition is that:

> Ohio's corrupt activity statute, [Ohio Rev. Code] R.C. 2923.32, is unconstitutionally vague, in contravention of the 14th Amendment to the United States Constitution.

(Doc. 1, at § 12.D.) The supporting facts are stated as:

> The State of Ohio failed to prove any more than the existence of two predicate offenses. This use of the corrupt activity statute lacks the distinctiveness and precision that the Due Process Clause requires: there is no distinction between someone who possesses or offers to sell cocaine, and one who does either or both and is guilty of corrupt activity. This theory is subject to discretionary abuse by prosecutors, because the decision regarding when a drug offender turns into a racketeer is subjective and arbitrary. Additionally, because the statute does not give the public sufficient notice of the acts required to avoid criminal liability, and because anyone who engages in two predicate acts is also unwittingly committing a corrupt activity violation, without also requiring an additional separate act or state of mind, the statute fails to provide adequate specificity and notice to withstand constitutional scrutiny.

<u>Id.</u> On direct appeal, Johnson made the same argument. (Doc. 9, RX 17, at 18-19.)

The appellate court rejected his argument.  The court noted that it had previously upheld Ohio Rev. Code § 2923.32 as constitutional, against a claim of vagueness, in State v. Siferd, 151 Ohio App.3d. 103, 124-125, 783 N.E.2d 591, 607-608 (2002), aff'd, 99 Ohio St.3d 145, 789 N.E.2d 237 (2003).  (Doc. 9, RX 20, at 27; Johnson, 2004 WL 603622, at *12.)

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  Sperry v. McKune, 445 F.3d 1268, 1271 (10th Cir.), cert. denied, 127 S.Ct. 597 (2006) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)); Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1105 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996).  Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  United States v. Venturella, 391 F.3d 120, 133 -134 (2d Cir. 2004) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)); Anderson v. Morrow,  371 F.3d 1027, 1031 (9th Cir. 2004).  Judicial review of a penal statute is generally restricted to consideration of the statute as applied in the particular case, provided the statute does not implicate the exercise of constitutional rights.  Sperry, 445 F.3d at 1271-1272; Venturella, 391 F.3d at 134.

In Siferd, the state court stated that:

> Ohio courts have uniformly rejected vagueness challenges to this statute. . . . the terms "participate in" and "affairs of the enterprise" are terms subject to their ordinary meaning according to their common usage, which, in the context of the statute, sufficiently apprise persons of ordinary intelligence of what conduct would violate the statute.

Siferd, 151 Ohio App.3d. at 125, 783 N.E.2d at 608.  In State v. Thrower, 62 Ohio

App.3d 359, 375, 575 N.E.2d 863, 874 (Ohio Ct. App. 1989), the court found "the

statute is sufficiently explicit to inform those who are subject to it what conduct on

their part will render them liable for its penalties."  See also State v. Hughes, No.

90-CA-54, 1992 WL 52473, at *6 (Ohio Ct. App. Mar. 13, 1992) ("an individual of

ordinary intelligence would reasonably understand what is required of him under

the law").

According to Johnson, "any person who engages in two predicate  acts may be

prosecuted for a RICO violation."  (Doc. 15, at 22.)  However, as discussed earlier,

isolated drug sales alone will not make a "pattern" under the statute, rather, the

illegal  activities must be "related to the affairs of the same enterprise."  Burkitt, 89

Ohio App.3d at 221, 624 N.E.2d at 215.  In any event, Johnson was not simply

charged with isolated drug sales, and the evidence at trial went beyond that

scenario.

Johnson also claims that "there is no distinction between someone who

possesses cocaine and someone who possesses cocaine and is guilty of a corrupt

activity violation."  (Doc. 15, at 22-23.)  Again, at a minimum, this misses the

"enterprise" element.  Johnson persists in portraying his offense as simply "someone

who possesses or offers to sell cocaine," doc. 15, at 22, ignoring evidence at trial that

he not only possessed and trafficked in crack cocaine, but that, over a period of

time, he provided cocaine for Morris and Thomas to sell, assisted them in the

process of selling, and also bartered drugs for the use of their apartments to

facilitate his own selling.

The issue here is whether a person of ordinary intelligence would know that possessing and trafficking in crack cocaine, and, over a period of time, repeatedly providing cocaine for other specific individuals to sell, assisting them in the process of selling, and bartering drugs for the use of their apartments to facilitate his own drug dealing, might constitute engaging in a pattern of corrupt activity.  See, e.g., Columbia Natural Resources, 58 F.3d at 1108-1109.  Johnson has failed to establish that the statute is  unconstitutionally vague.  See generally Siferd, 151 Ohio App.3d. at 125, 783 N.E.2d at 608; Thrower, 62 Ohio App.3d at 375, 575 N.E.2d at 874.

The petition should be denied as to the fourth ground because Johnson has not established that the statute or the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in Kolender v. Lawson and Grayned v. City of Rockford.


VII.  SUMMARY

The petition for a writ of habeas corpus should be denied.  The first and fifth grounds of the petition are barred as procedurally defaulted.  The petition should be denied as to the second, third, and fourth grounds because the state court decisions were not contrary to, or did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

<u>RECOMMENDATION</u>

It is recommended that the petition be denied.

Dated:   <u>April 26, 2007</u>         <u>/s/ Kenneth S. McHargh</u>
                                    Kenneth S. McHargh
                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).