UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Calvin Johnson, | ) | CASE NO. 3:05 CV 2550 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Kelleh Konteh, Warden, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Respondent. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge McHargh (Doc. 17) which recommends denial of the Petition for Writ of Habeas Corpus now pending before the Court.  For the following reasons, the Report and Recommendation is ACCEPTED.

**Introduction**

Petitioner, Calvin Johnson, commenced this action with the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is incarcerated after a jury trial in the Wyandot County Court of Common Pleas.  This matter has been fully briefed and the Magistrate Judge issued his Report and Recommendation recommending that the Petition for Writ of

1

Habeas Corpus be denied.  Petitioner has filed Objections to the Report and Recommendation.

**Standard of Review**

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides, "The judge must determine *de novo* any proposed finding or recommendation to which objection is made.  The judge may accept, reject, or modify any proposed finding or recommendation."

**Discussion**

Petitioner was convicted in 2003 for engaging in a pattern of corrupt activity in connection with drug trafficking and possession of drugs.  His Petition raises five grounds for relief.  For the following reasons, the Court agrees with the Magistrate Judge that none warrants issuance of a writ.

The first ground asserts a deprivation of petitioner's right to due process of law and a unanimous verdict based on the trial court's erroneous jury instructions, which failed to ensure a unanimous jury verdict on all the elements of the offense charged.

The Magistrate Judge found petitioner procedurally defaulted this claim by failing to make a proper contemporaneous objection to the jury instructions at trial, and that trial counsel was not constitutionally defective so as to serve as cause to excuse the default.

Petitioner disagrees that this ground was procedurally defaulted.  While he conceded on appellate review that he did not object to the jury instructions, petitioner contends that trial counsel raised the substantive issue in an oral motion seeking a judgment of acquittal and in a written motion for entry of judgment of acquittal and, therefore, the trial and appellate courts had an opportunity to review the merits.  Petitioner, however, did not make this argument to the state

2

appellate court. Additionally, petitioner argues that the state appellate court unreasonably applied the plain error review of this claim after it concluded that no contemporaneous objection was made. Because no contemporaneous objection was made, the plain error review was appropriate. The Court agrees with the Magistrate Judge's conclusion that this ground was procedurally defaulted and that because appellant does not show prejudice from the alleged errors in the jury instruction, trial counsel was not constitutionally deficient to excuse the default.

The second ground asserts that petitioner's conviction violates due process in that the State failed to present sufficient evidence to prove all the elements of the offense charged by proof beyond a reasonable doubt. The State presented insufficient evidence of the element of "enterprise," separate and distinct from the "pattern of corrupt activity."

The Magistrate Judge concluded that the state appellate decision did not involve an unreasonable application of *Jackson v. Virginia,* 443 U.S. 307 (1979).  Despite petitioner's objection to the contrary, this Court agrees.  The appellate court discussed the evidence supporting petitioner's conviction:

> At trial, there was evidence presented that the investigation began when apartment manager, Chet Rowe, contacted the police about a steady increase in traffic coming and going to one of the apartments in his complex. Rowe also gave the police the license plate number of a car with Lucas County license plates that had been frequently at the complex for several days at a time. Pursuant to that call, the police began surveillance on Deb Thomas' apartment, including conducting trash pulls that produced evidence of drug use and trafficking. Additionally, the police also observed the car with the Lucas County license plate number that Rowe provided. When the plate number was traced, the police discovered Johnson was the registered owner of that vehicle.
>
> Subsequently, a search warrant was obtained and over thirty-five grams of crack cocaine was recovered from the search of Thomas' apartment. Additionally, the Johnson's BMV vehicle registration was found at Thomas' apartment during the search.
>
> Morris and Thomas both testified that Johnson supplied each with crack cocaine for the

use of their apartments. As stated above, both testified that they knew Johnson as "Marcus," that Johnson had sold crack cocaine out of their apartments and that Johnson had supplied them with crack cocaine to sell out of their apartments. Specifically, Thomas stated that she had been romantically involved with Johnson from September through December of 2001 and that Johnson made trips from Toledo and would stay with her two to four days at a time. Each time Johnson would come from Toledo he would bring with him approximately half an ounce to an ounce of crack cocaine. Thomas also testified that Johnson taught her how to "cut" the crack cocaine into smaller pieces and package it for sale. Morris testified that Johnson sold crack cocaine out of she and her husband's home from June to September of 2000. Morris stated that both she and her husband were addicted to crack cocaine and that Johnson would supply them crack cocaine for the use of their home. She also stated that Johnson traveled from Toledo and would stay approximately two to three days at a time.

The state also provided the testimony of Agent George Gyrko, who testified as to the inflated retail value of crack cocaine in Wyandot County. When asked, "Can you compare for us, Agent Gyrko, prices for crack cocaine in the fall of 2000 via metropolitan Toledo and a county such as Wyandot," Gyrko stated:

> Yeah. It's double. Toledo, a twenty dollar rock would sell on the street in Toledo in the north end, for example, and if we sold it down here you can charge double; forty dollars for a rock, if not a little more. It's supply and demand. The demand, uhm, in this area is fairly high. Demand in Toledo is also high, but the supply is greater so the prices have to come down.

Finally, Johnson himself admitted to using illegal drugs. In his testimony, while he denied trafficking in crack cocaine or supplying either Morris or Thomas with drugs, he did admit that he "[s]moked drugs. Uhm, any drugs from legal to illegal."

Based on the above testimony of Morris and Thomas, it is clear the evidence is sufficient to find Johnson either trafficked in or possessed crack cocaine. Although both Morris and Thomas were convicted of related drug offenses and were co-conspirators who were testifying as a result of plea agreements, this information was made known to the jury. Their criminal histories and substance abuse problems were revealed to the jury members, who could then take that information and consider the reliability of these witnesses. Moreover, both Morris and Thomas corroborated one another's stories. Furthermore, the state's additional evidence further supported a finding that Johnson either trafficked in or possessed crack cocaine. Finally, Johnson's own testimony was sufficient to support a finding of possession of crack cocaine. Accordingly, upon reviewing the evidence in the light most favorable to the state, we find that a rational trier of fact could have found all of the essential elements for either trafficking in or possession of crack cocaine.

> Additionally, upon reviewing the evidence presented in a light most favorable to the state, we find that a rational trier of fact could have also found an enterprise distinct and separate from the pattern of corrupt activity. As this Court noted in *State v. Sifred*, 151 Ohio App.3d 103 (2002),
>
>> [f]ederal and state courts have generally defined the concept of being 'associated with' an enterprise within the overall context of the statute, often concluding that a defendant has 'associated with' an enterprise when he or she 'participate[d]' in, directly or indirectly, the affairs of the enterprise. .. [T]he Ohio Supreme Court described the level of association necessary to support an R.C. 2923.32(A)(1) conviction in a broad sense, indicating that the state had to prove that each defendant was voluntarily connected to the pattern of corrupt activity comprising the enterprise, and performed two or more acts in furtherance of it. Again, the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise. ... Direct evidence of agreement is unnecessary: proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence, ordinarily the acts and conduct of the alleged conspirators themselves. Additionally, once the conspiracy had been established, the government need show only slight evidence that a particular person was a member of the conspiracy. Of course, a party to the conspiracy need not know the identity, or even the number, of his confederates.
>
> Based on the evidence presented at trial, there is sufficient evidence to find that Johnson was engaged in an enterprise involving the transportation and trafficking of drugs from Toledo to Wyandot County. Unlike *State v. Agner* (1999), 135 Ohio App.3d 286, 290-291, where there was only evidence of a single defendant selling drugs with no further evidence of the defendant being a member of any larger organization, Morris and Thomas' testimony provide evidence of Johnson being the supplier of an enterprise to bring drugs from Toledo to Wyandot County. The testimony of Agent Gyrko further shows the profitability in such an enterprise. Accordingly, reviewing the evidence presented in a light most favorable to the State, we find that a rational trier of fact could have found all of the essential elements to conclude Johnson was employed by or associated with an enterprise.

*State v. Johnson,* 2004 WL 603622 (Ohio App.3rd Dist. 2004).

The second ground for relief lacks merit.

The third ground asserts that trial counsel rendered constitutionally deficient and prejudicial performance, based on a failure to properly raise issues at trial and properly preserve those issues for review on appeal. Again, the Court agrees with the Magistrate Judge that the

5

state court's decision on this claim was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). In particular, the appellate court stated that, in light of their previous disposition of the relevant issues, there was no reasonable probability that the claimed deficiencies would have changed the result of the trial.

This ground lacks merit.

The fourth ground asserts that Ohio's corrupt activity statute, Ohio Revised Code (O.R.C.) § 2923.32, is unconstitutionally vague.

The state appellate court rejected this argument: "We have previously upheld R.C. 2923.32 as constitutional in *State v. Siferd*, 151 Ohio App.3d (2002)." The Court agrees with the Magistrate Judge's further analysis concluding that the statute is not unconstitutionally vague.

The fourth ground lacks merit.

The fifth ground asserts a deprivation of petitioner's right to the effective assistance of appellate counsel based on the failure to raise a meritorious sentencing issue, under *Blakelv v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 125 S.Ct. (2005).

The Magistrate Judge concluded that this ground is procedurally defaulted on the basis that petitioner's Rule 26(B) motion was untimely filed and he failed to establish cause for his failure to follow the procedural rule. This Court agrees.

For the foregoing reasons, petitioner has not demonstrated that the Petition for Writ of Habeas Corpus should be granted.

**Conclusion**

For the reasons set forth herein and for the reasons set forth in the Magistrate Judge's Report and Recommendation, the Petition for Writ of Habeas Corpus is denied. Further, this

Court hereby fully incorporates the Report and Recommendation by reference herein.

This Court now considers whether to grant a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253 which states in relevant part:

> \*\*\*
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the United States Supreme Court determined that

> "[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) ).

If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484. In instances where a claim is procedurally defaulted, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis supplied).

For the reasons stated above and in the Report and Recommendation, this Court finds no

basis upon which to issue a certificate of appealablity.

  IT IS SO ORDERED.

            /s/ Patricia A. Gaughan
            PATRICIA A. GAUGHAN
            United States District Judge

Dated: 8/27/07